IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| AMY PROVENZANO, | : | HON. JEROME B. SIMANDLE |
| Plaintiff, | : | Civil No. 10-4460 (JBS) |
| v. | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | **OPINION** |
| Defendants. | : | |

APPEARANCES:

Robert Anthony Petruzzelli, Esq.
JACOBS, SCHWALBE & PETRUZZELLI, PC
Woodcrest Pavilion
10 Melrose Avenue Suite 340
Cherry Hill, NJ 08003
        Attorney for Plaintiff

Paul J. Fishman
UNITED STATES ATTORNEY
        By:  Karen T. Callahan
             Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278
        Attorney for Defendant

**SIMANDLE**, District Judge:

## I.  INTRODUCTION

This matter comes before the Court pursuant to 42 U.S.C. § 405(g), to review the final decision of the Commissioner of the Social Security Administration, denying the application of Plaintiff Amy Provenzano for Disability Insurance Benefits and

Supplemental Security Income.  At issue in this case is whether there is substantial evidence in the record that was fully and fairly developed to support the Administrative Law Judge's ("ALJ") determination that Provenzano's impairments were not severe enough to qualify her as disabled under the Social Security Act.  For the reasons explained below, the Court will vacate and remand because the ALJ did not properly consider the effects of Provenzano's medication on her residual functional capacity.

## II.  BACKGROUND

Plaintiff, Amy Provenzano, was born on August 19, 1970 and currently lives in Bridgeton, New Jersey.  Provenzano is a high school graduate with vocational training in cosmetology.  R. 43, 174.  She worked in cosmetology on and off for ten or fifteen years until August 8, 2006.  R. 44.

On December 24, 2006, Provenzano was injured in a motor vehicle accident, and on February 14, 2007 she slipped and fell, injuring herself.  R. 20-21.  On March 21, 2007, Provenzano filed concurrent claims for disability insurance benefits and Supplemental Security Income.  Provenzano alleged that the onset of her disability was August 5, 2006 based on her bipolar disorder, and also cited her more recent injuries as a result of the motor vehicle accident and slip and fall incident.  R. 135-

2

47, 164, 169.

The Commissioner of Social Security has promulgated regulations for determining whether a claimant is disabled.  20 C.F.R. § 416.920.[1]  It is the claimant's burden to show that he or she is severely impaired, and either that the severe impairment meets or equals a listed impairment and lasts for the requisite duration, or that it prevents the claimant from performing the claimant's past work.  <u>Wallace v. Secretary of Health and Human Services</u>, 722 F.2d 1150, 1153 (3d Cir. 1983). If the claimant meets those burdens by a preponderance of the evidence, the Commissioner bears the burden of proving that other work is available for the claimant.  <u>Kangas v. Bowen</u>, 823 F.2d 775, 777 (3d Cir. 1987).  Ultimately, entitlement to benefits is dependent upon finding the claimant is incapable of performing work in the national economy.

On August 18, 2009, a hearing was held before an administrative law judge (ALJ).  The ALJ found that Provenzano

---

[1]  The regulations require application of a five-step sequential analysis.  Step one is whether the claimant is not working and otherwise meets the requirements for Social Security aid.  Step two is whether the claimant suffers from a severe impairment.  Step three is whether the severe impairment meets or equals a listed impairment and has lasted or is expected to last for a continuous period of at least twelve months.  Step four is whether the claimant is still able to perform work done in the past despite the severe impairment.  And step five involves an assessment of the claimant's ability to perform work, age, education, and past work experience to determine whether or not the claimant is capable of performing other work which exists in the national economy.  20 C.F.R. § 404.1520(b)-(f).

met the status requirements of the Act through December 31, 2010, R. 149-156, and that Provenzano had not engaged in substantial gainful activity since August 5, 2006, the alleged onset date. The ALJ also found that Provenzano suffers from severe impairments, including lumbosacral sprain/strain and bipolar disorder.

However, the ALJ determined that these impairments do not meet or equal the criteria of any of the impairments listed in the regulations.  And, rejecting some of Provenzano's testimony about her limitations, R. 33., the ALJ found that Provenzano had the residual functional capacity to perform exertional demands of light work with limitations.[2]  The ALJ stated that Provenzano's past relevant work as a hairstylist did not require the performance of work functions precluded by her impairments.  The ALJ also found, in the alternative, that there are jobs that exist in significant numbers in the national economy that Provenzano could perform, such as Food and Beverage Order Clerk and Addresser.  Based on these findings, the ALJ determined that Provenzano was not disabled from August 5, 2006 through September

─────────────────────

[2]  The ALJ qualified Provenzano's residual functional capacity as maximum lifting of 20 pounds and frequent lifting of 10 pounds.  Also, the ALJ found that Provenzano can stand and/or walk for six hours in an eight hour workday; can sit for six hours in an 8 hour workday; has no communicative, visual, manipulative, or environmental restrictions; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but can never climb ladders, ropes, and scaffolds.

4

17, 2009.  The Appeals Council denied Provenzano's request for
review on July 17, 2010.  R. 1-3.

On this appeal, Provenzano makes several arguments
contesting the ALJ's findings.[3]  Provenzano argues: (1) that her
symptoms of pain should have been considered a severe impairment,
and that even if not itself an impairment, her pain limits her
residual functional capacity more than the ALJ found; (2) that
the ALJ failed to properly evaluate and weigh certain pieces of
medical evidence in determining Provenzano's residual functional
capacity; and (3) that the ALJ erred in finding that Provenzano's
residual functional capacity was sufficient, even as determined
by the ALJ, for her to return to work as a hairdresser or to
perform other jobs.

## III.  DISCUSSION

### A.  Standard of Review

This Court is empowered by 42 U.S.C. § 405(g) to review the
Commissioner's decision to deny benefits.  See Ventura v.
Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  The Court must uphold
the Commissioner's factual findings where they are supported by

---

[3]  Plaintiff's brief makes arguments in scattershot fashion,
often with no more than a conclusory sentence buried in an
unrelated paragraph.  The Court has done its best to identify and
address each argument; to the extent any argument is left
unaddressed it is because it was not sufficiently developed in
Plaintiff's submissions.

5

"substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3);
Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001).
Substantial evidence means more than "a mere scintilla."
Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting
Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  It
means "such relevant evidence as a reasonable mind might accept
as adequate to support a conclusion."  Id.

     To facilitate this Court's review, the ALJ must set out a
specific factual basis for each finding.  Baerga v. Richardson,
500 F.2d 309 (3d Cir. 1974), cert. denied, 420 U.S. 931 (1975).
Additionally, the ALJ "must adequately explain in the record
[the] reasons for rejecting or discrediting competent evidence."
Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987).


**B. Pain as severe impairment**

     Provenzano appears to argue that the ALJ erred by not
considering her pain as a separate severe impairment.  But pain
is considered a symptom of other conditions.  See Green v.
Schweiker, 749 F.2d 1066, 1070 (3d Cir. 1984).  Evaluation of
subjective complaints of pain therefore involves the
identification of some objective condition that could reasonably
produce the pain, and if identified, then an assessment of
whether that condition meets a listing, and if not, what
limitations that condition, including the symptoms of pain,

impose on an individual.  This is precisely how the ALJ proceeded.  The ALJ concluded that the source of Provenzano's pain, her lumbosacral sprain/strain, was a severe impairment affecting her ability to perform basic work activities, but did not meet or exceed a listed condition.  R. 15.  Then the ALJ considered the severity of Plaintiff's pain and the extent to which it limits her residual functional capacity, as discussed below.  The Court discerns no error with respect to the ALJ's treatment of Provenzano's pain in steps two and three.

### C.  Assessment of residual functional capacity

Provenzano argues that the ALJ's opinion failed to properly assess her residual functional capacity on a function-by-function basis when determining her ability to return to work as a hairdresser and to perform other work.  See SSR 96-8p(4).  In fact, the ALJ did offer a function-by-function assessment of Provenzano's physical and mental limitations.  The ALJ found that:

> The claimant retains the residual functional capacity to perform the exertional demands of light work, or work which requires maximum lifting of twenty pounds and frequent lifting often pounds (20 CFR 404.1567 and 416.967). The claimant's capacity for light work is diminished by significant additional limitations as she is able to lift/carry ten pounds frequently and twenty pounds occasionally; can stand and/or walk for six hours in an eight hour workday; is able to sit for six hours in an eight hour workday; has no

7

> communicative, visual, manipulative, or
> environmental restrictions; can occasionally
> climb ramps and stairs, balance, stoop, kneel,
> crouch, and crawl, but can never climb
> ladders, ropes, and scaffolds; is able to
> understand, remember and carry out detailed
> instructions; can work in coordination with or
> proximity to others without being distracted
> by them; is able to interact appropriately
> with the general public; can accept
> instructions and respond appropriately to
> criticism from supervisors; is able to get
> along with coworkers or peers without
> distracting them or exhibiting behavioral
> extremes; can maintain socially appropriate
> behavior and adhere to basic standards of
> neatness and cleanliness; and is aware of
> normal hazards and can take appropriate
> precautions.

R. 33-34.  This description addresses all of the functions the ALJ is required to consider under SSR 96-8p(4), as set forth in 20 C.F.R. § 404.1545.

Provenzano also makes several arguments regarding the ALJ's support for these findings, which the Court will address point-by-point below.  Generally, the ALJ may not ignore his duty to consider all the medical evidence and must provide adequate reasons for dismissing or discarding evidence.  Ackers v. Calahan, 997 F. Supp. 648 (W.D. Pa. 1998); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).  And the ALJ may not substitute his opinion for that of a physician without providing a basis for his conclusions.  Schoenwolf v. Callahan, 972 F. Supp. 277, 287 (D.N.J. 1997).  Instead, the ALJ is required to set forth a "clear and satisfactory" explanation for the basis of his

8

decision.  Terwilliger v. Chater, 945 F. Supp 836 (E.D. Pa.
1996).


    1.  Dr. Kessler

Upon examination of Provenzano in August 2007, Dr. Martin
Kessler diagnosed Provenzano with bipolar disorder and spinal
sprains from her accidents, advising total supervised home care
and limitations on Provenzano's physical activities.  R. 368.  He
assessed that the length of Provenzano's disability would be from
August 24, 2007 to October 24, 2007, at which time she will have
recovered.  R. 370.  Most of Dr. Kessler's notes are illegible,
so it is impossible to tell the particular basis for his findings
of temporary disability.

Dr. Kessler again saw Provenzano in December 2007 and found
that Provenzano would be unable to work from December 20, 2007 to
January 17, 2008.  After the December 2007 exam, in addition to
finding that Provenzano would be incapacitated for that temporary
period, Dr. Kessler found that Provenzano had a longer-term
orthopedic disability rating of "Class II," indicating a
functional capacity adequate to conduct normal activities despite
some handicap, discomfort or limited mobility of one or more
joints.  R. 357.

In May 2008, Dr. Kessler filled out a disability evaluation
form which stated that Provenzano's pain was severe enough to be

distracting to adequate performance of daily activities or work, and would increase with physical activity. R. 349. Dr. Kessler opined that Provenzano's pain limited her effectiveness for sustained work activity and would remain a significant element in her life. R. 349. Dr. Kessler also indicated that medication side effects limited Provenzano's effectiveness in performing work duties. Id.

Provenzano first contends that the ALJ improperly dismissed the reports that Provenzano was completely incapacitated. Although the findings were explicitly about some temporary disability, Provenzano contends that Dr. Kessler's reports provide a "longitudinal picture" of Provenzano's impairments and should be used as substantial evidence supporting Provenzano's alleged disability. But the ALJ was correct that Dr. Kessler's reports finding that Provenzano was temporarily disabled do not adequately support Provenzano's argument that she is disabled as the term is used by the Social Security Act. Under the Act, a disability must last for twelve consecutive months. See Barnhart v. Walkton, 535 U.S. 212 (2002) (requiring that a plaintiff be disabled for a period of twelve consecutive months). Provenzano's argument that two non-consecutive periods of temporary disability can be stitched together to create a "longitudinal picture" of a permanent disability is unpersuasive, especially in light of the fact that Dr. Kessler was

10

simultaneously assessing Provenzano's long-term condition, and finding her to not have severely disabling long-term problems.

Provenzano also argues that the ALJ improperly ignored Dr. Kessler's finding regarding pain.  But the ALJ acknowledged Dr. Kessler's answers on the disability assessment form regarding Provenzano's pain.  R. 23.  However, the ALJ determined that the weight of the objective evidence ran contrary to Dr. Kessler's assessment:

> [T]here is a lack of objective clinical or laboratory findings to support the degree of limitation alleged [by Dr. Kessler]; the record reveals no significant evidence of neurologic compromise which would affect the claimant's ability to stand, walk or sit to the degree as indicated; the assessment is inconsistent with specific observations and opinions made on August 24, 2007 and December 1, 2007 by this doctor; his opinion is not supported by radiological reports documenting little in the way of significant findings; and the alleged restrictions due to pain and side-effects from medications are clearly not substantiated by the totality of the record, especially when considering the examination findings of Dr. W. Scott Williams and consultative examination reports by Dr. T.1. Citta-Pietrolungo and Dr. Sharan Rampal in October 2007.

R. 24.

With the exception of the issue of side effects of medication, which is discussed below, there is substantial evidence to support the ALJ's findings in weighing Dr. Kessler's opinion.

11

### 2. Dr. Gonzalez

In October 2007, Jo Anne Gonzalez, Ph.D, performed a mental health examination of Provenzano. Provenzano contends that the ALJ overlooked some of the findings in Dr. Gonzalez's report and downplayed her findings.

Provenzano told Dr. Gonzalez that she had no "pain-related" behaviors, but was depressed, anxious and had manic-related symptoms. R. 301-02. Dr. Gonzalez noted that Provenzano was cooperative, her social skills were adequate, eye contact was appropriate and she was well groomed. Provenzano's thought processes were coherent and goal-directed, and there was no evidence of any delusions, hallucinations or paranoid tendencies. While Dr. Gonzalez noted that Provenzano's affect and mood were anxious, she also found that Provenzano was oriented to time, place, person and situation. Provenzano told Dr. Gonzalez that she was capable of performing self-grooming, cooking simple foods, managing her money, and socializing. R. 302.

Summarizing Dr. Gonzalez's opinion, the ALJ found, "It appears that based solely on the claimant's complaints, she cited the claimant's prognosis was guarded, as the examination showed no real problems." This is correct, or at least a conclusion based on substantial evidence. In any case, Dr. Gonzalez's findings do not contradict the ALJ's assessment of Provenzano's residual functional capacity. That the ALJ did not acknowledge

every finding made in Dr. Gonzalez's report is irrelevant, as the ALJ is not obligated to provide a detailed description of all medical treatment notes.  See Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001).

### 3.  Side effects of medications

Provenzano argues that the ALJ failed to evaluate the negative side effects of her psychiatric medications. Provenzano's treatment records and hearing testimony document her complaints of experiencing fogginess, drowsiness and sedation from her medications.  Provenzano argues that the ALJ's dismissal of these complaints was done without proper explanation.  The Court agrees, as explained below.

Although the ALJ acknowledged Provenzano's testimony that her medications cause some side effects that may potentially affect her capacity to work, R. 18-19, the ALJ dismissed this evidence because of two medical reports noting a lack of side effects.  R. 21, 26.  But the ALJ misread these reports.

The first report is the April 2007 assessment by Dr. Kessler, which indicates that Provenzano was not suffering from any side effects from medication at that time.  However, the report is referring to a lack of side effects from Provenzano's use of Tylenol and codeine, not to Provenzano's psychiatric medications, which she began taking after April 2007.  R. 376.

13

Indeed, Dr. Kessler himself later opined that the medications'
side effects would have a significant affect on Provenzano's
ability to work.  R. 349.  The second report is a statement made
by Dr. Rajalia Prewitt on July 7, 2007 that Provenzano denied
having side effects from the Depakote she was prescribed during
her stay in a mental health facility.  R. 264.  This report also
predates the time when Provenzano began taking the combination of
Abilify, Zyprexa, and Depakote from which she reports drowsiness
and dizziness, among other side effects.  R. 430, 433, 440.

It is not entirely clear to the Court what Provenzano's
regime of medications included during the various periods at
issue in this claim for benefits, but it is clear that the ALJ
did not adequately assess that issue and consider the side
effects of this medication on Provenzano's residual functional
capacity.  Since the actual state of affairs is unclear to the
Court, the decision will be remanded.  On remand, the ALJ should
consider the side effects of Provenzano's medication in addition
to any limitations those effects have on her ability to perform
work, including her ability to work regularly on an assigned
schedule.  See Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994)
(holding that the ALJ must analyze all of the evidence in the
record and provide an adequate explanation for disregarding
evidence in order to be affirmed).

14

4.  Dr. Bustos

Provenzano argues that the ALJ failed to consider the entirety of a mental residual functional capacity assessment performed by Dr. Nenuca Bustos, M.D., and ignored a section that describes her limitations.  However, the ALJ properly considered Dr. Bustos's report.

Dr. Bustos' assessment of Provenzano's mental residual functional capacity, Section III of the report, found that Provenzano had the ability to understand, remember, and carry out instructions, as well as make simple decisions and relate to others in low demand, simple work.  Ex. 11F.  However, Section I or the "Summary Conclusion" of Dr. Bustos' report made several findings that Provenzano was "moderately limited" in several categories, including her ability to maintain attention and concentration for extended periods.  Accordingly, Provenzano argues that the ALJ erred by not addressing the findings of moderate limitations in Section I of Dr. Bustos' report.

The ALJ did not err in only using Section III of the report to determine Provenzano's mental RFC.  Section I may be assigned little or no weight since it is "not the final RFC finding." Molloy v. Astrue, Civ. No. 08-4801, 2010 WL 421090, at * 11 (D.N.J. Feb. 1, 2010) ("[Section I] of the examination form does not constitute the RFC assessment but rather is merely a worksheet to aid employees").  Rather, it is Section III of that

15

form which contains the physician's assessment of a plaintiff's mental RFC. See Liggett v. Astrue, No. 08-1913, 2009 WL 189934, at *4 (E.D. Pa. Jan. 27, 2009).

Moreover, the medical records do not contradict Dr. Bustos' findings that Provenzano could understand, remember and follow simple instructions, make simple decisions, and relate to others in a low demand, simple work setting. R. 316, 321. This assessment fully supports the ALJ's conclusions concerning Provenzano's ability to perform unskilled sedentary work.

Accordingly, the record does not indicate that Provenzano's mental abilities were more limited than what the ALJ found and presented to the vocational expert.[4]

### 5. Severity of pain

Provenzano contends that the ALJ improperly ignored both the evidence of the severity of her pain as well as the effect that less-severe pain would have on her ability to work. However, it is clear from the ALJ's opinion that the ALJ considered all the relevant factors and made a conclusion based on substantial

---

[4] It also follows that the ALJ was not required to provide an explanation for why Dr. Bustos' specific findings were not included in Provenzano's mental RFC because Dr. Bustos' findings were consistent with the hypothetical posed to the vocational expert.

evidence.[5]   After considering the objective record, the ALJ found that Provenzano's alleged severity of pain was not supported by objective medical evidence.

Specifically, the objective medical evidence includes multiple examinations showing no herniation and normal lumbar spine (Ex. 15F, 23F); the fact that Provenzano was only prescribed relatively mild pain medication and had full range of motion of the cervical spine and good range of motion of the lumbar spine (Ex. 15F); evidence that Provenzano did not seek treatment for her pain consistently, R. 29;[6] and the fact that Provenzano was independent in self-grooming, she cooked simple foods, managed her money, socialized with friends, and enjoyed watching television.[7]

---

[5]   The regulatory  factors are: 1) claimant's daily activities; 2) the location, duration, frequency, and intensity of the pain and symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken to alleviate the pain and symptoms; 5) treatment other than medication; 6) any measures used to relieve the pain or other symptoms; and 7) other factors concerning functional limitations and restrictions due to pain and symptoms. Hartranft v. Apfel, 181 F.2d 358, 362 (3d Cir. 1999) (citing § 404.1529(c)).

[6]   See Mason v. Shalala, 994 F.2d 1058, 1068 (3d Cir. 1992) (finding that the ALJ's consideration of the fact that a claimant did not seek medical treatment for pain was sufficient to diminish claimant's credibility).

[7]   See Conklin v. Comm'r of Soc. Sec., 2010 WL 2680278, *6 (D.N.J. June 30, 2010) (upholding the ALJ's determination that plaintiff's daily activities conflicted with her alleged severity of pain, and thereby diminished plaintiff's credibility); Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002).

17

The ALJ determined that Provenzano's pain did not produce any exertional or non-exertional limitation preventing her from performing a broad range of light work.  R. 30.  There is substantial evidence to support the ALJ's determination that Provenzano's level of pain was not severe enough to impair her beyond the level of functional capacity found by the ALJ.  See Giese v. Comm'r of Soc. Sec., 251 F. App'x 799, 803 (3d Cir. 2007) (holding that the ALJ's rejection of claimant's subjective allegations was supported by substantial evidence because the ALJ weighed conflicting evidence and explained her rejection by using multiple doctor reports).[8]

### D.  Assessment of particular job listings

Provenzano argues that the ALJ should have found her unable to perform work as a hairdresser because of the requirements necessary to learn the job.  But the ALJ found that Provenzano had already learned the skills necessary for the work in her years previously employed as a hairdresser, and therefore did not need to re-learn the necessary skills.  R. 31.  Provenzano also argues that ALJ erred in finding that Provenzano has the RFC to

_____

[8]  Provenzano also argues that the ALJ erred in disregarding the vocational expert's response to the hypothetical incorporating Provenzano's alleged severity of pain as a limitation.  But since the ALJ ultimately concluded that Provenzano lacked such limitations, the expert's response was irrelevant.

perform the exertional demands of light work "diminished by significant additional limitations" because the ALJ did not specify what those additional limitations are.  This argument is meritless, as the ALJ specifically sets forth Provenzano's additional limitations.  R. 33-34.

Provenzano also contends that the ALJ erred when finding that Provenzano could, in the alternative, perform the jobs of addresser or food and beverage clerk.  Provenzano asserts that a conflict existed between the jobs identified by the vocational expert and the description of those jobs in the Dictionary of Occupational Titles in that the jobs require a reasoning level of two, which exceeds her abilities.  The Dictionary of Occupational Titles indicates that a Reasoning Development level of two only requires a person to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions."  A job requiring level two would not contradict the mandate that Provenzano's work be simple, routine and repetitive.  While level three reasoning has been found to be inconsistent with the ability to perform only simple, routine, and repetitive tasks, this Circuit recognizes that level two is consistent with an RFC for simple repetitive work.  See Hackett v. Barnhart, 393 F.3d 1168, 1176 (finding that level three reasoning level is not consistent with simple, repetitive work, but level two reasoning level is consistent); see also Money v. Barnhart, 91 Fed. App'x

201, 215 (3d Cir. 2004) ("A reasoning requirement of two does not
contradict work that is "simple, routine and repetitive.").

## IV.   CONCLUSION

Most of the ALJ's contested findings are supported by
substantial evidence.  The ALJ erred, however, when considering
the side effects of Provenzano's medications by relying on
statements from physicians that did not address the drugs in
question.  Because more fact-finding is needed on this issue, the
Court will vacate and remand this case to the ALJ.  The
accompanying Order will be entered.


**August 31, 2011**                     **s/ Jerome B. Simandle**
Date                                    JEROME B. SIMANDLE
                                        United States District Judge